IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ARCAMONE-MAKINANO et al,<br><br>Plaintiffs,<br>v.<br><br>BUREAU OF LAND MANAGEMENT et al,<br><br>Defendants. | REPORT & RECOMMENDATION<br><br>Case No. 2:21-cv-00458-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

This matter is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF 43). Before the court is Defendant Bureau of Land Management's (BLM or Defendant) Second Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (Motion) (ECF 52). Having carefully considered the relevant filings, the court finds that oral argument is not necessary and will decide this matter based on the written memoranda. *See* DUCivR 7-1(g). For the reasons discussed herein, the undersigned RECOMMENDS that the court GRANT the Motion.

### I.     BACKGROUND

Plaintiffs Amelia Arcamone-Makinano, Bonifacio Makinano, Guillermo Avila Paz, Clifton Aduddell, and Randal Massaro (collectively, Plaintiffs), proceeding pro se, initially filed this lawsuit on July 27, 2021 against the BLM and the American Society for Prevention of Animals (collectively, Defendants) (ECF 1). With leave of court, Plaintiffs filed their Amended Complaint (Amended Complaint) on August 23, 2021 (ECF 30). Thereafter, Defendants filed motions to dismiss, and this court recommended that the BLM's motion be denied, and that American Society for Prevention of Animals' motion be granted (ECF 44). The recommendation was later adopted in full (ECF 50), and the court granted BLM leave to file another motion to dismiss (ECF 49). On August 16, 2022, BLM filed the present Motion (ECF 52). Plaintiffs responded to the Motion on

1

August 23, 2022 (ECF 53). The BLM then filed a Reply in support of the Motion on September 6, 2022 (ECF 54). Additionally, the BLM submitted supplemental authority to the court on October 23, 2022 (ECF 56), which Plaintiffs opposed (ECF 57). The court reviewed and considered all these filings for this recommendation.

The court repeats much of the factual background as set forth in the May 6, 2022 Report and Recommendation, except facts related to dismissed Defendant American Society for the Prevention of Cruelty of Animals (ECF 44 and 50). This action was removed to federal court from the Third District Court of Utah on July 27, 2021 (ECF 2). The claims in this case arise from three of the five Plaintiffs' alleged unsuccessful plans to visit the Onaqui herd of wild free-roaming horses contemporaneously with the horse round-ups in July 2021 (July 2021 Round Up) (ECF 30 at 2–3).

According to the Amended Complaint, a herd of more than 400 wild free-roaming horses populated the Onaqui Mountain Range in central Utah (*id.* at 5). On July 1, 2021, the BLM issued a final decision to capture horses in that herd at the Dugway Proving Grounds in Tooele and Juab Counties, Utah to reduce the number of horses to a population the range could sustain (*id.*). Plaintiffs point to excerpts of the BLM decision that state the area suffered from drought conditions and less grass was available on the range to support wildlife or livestock grazing (*id.*). Plaintiffs also allege in their Amended Complaint that the BLM removed wild horses but did not reduce the number of livestock grazing permittees in the same area (*id.* at 7). Using a helicopter drive-trapping operation, 296 horses were captured during the July 2021 Round Up (*id.* at 8).

Two Plaintiffs, Amelia Arcamone-Makinano and Bonifacio Makinano (collectively, the Makinanos), planned to visit to show their children the herd and teach them about early American history (ECF 30 at 2). Plaintiff Clifton Aduddell (Plaintiff Aduddell) is a member of the Choctaw

tribe and President of the Native American Church of Ghost Dancers (*id.* at 4). Plaintiff Randal Massaro (Plaintiff Massaro) is President of Union Members for the Preservation of Wildlife International (*id.* at 4). Plaintiff Guillermo Avila Paz (Plaintiff Paz) visits the herd regularly to photograph the herd and displays those photographs at art galleries (*id.* at 2–3). His visits provide him therapy in overcoming and managing the effects of a past traumatic brain injury (*id.*).

Plaintiffs' Amended Complaint alleges BLM violated the Wild and Free-Roaming Horses and Burros Act (the Wild Horses and Burros Act),[1] and generally mentions other Federal Environmental statutes and regulations,[2] but only requests relief under the Wild Horses and Burros Act (ECF 30 6, 8–9). Plaintiffs ask for an order stating: (1) "that BLM violated the Wild and Free-Roaming Horses and Burros Act"; (2) that the Onaqui range be closed to grazing by livestock animals; (3) that horses rounded up in the July 2021 Round Up be returned to the Onaqui range immediately; (4) that any horses not returned to the Onaqui range be tracked with GPS collars to protect the horses from ever going to slaughter and horses not returned be put in off-range pastures, not off-range corrals, for the rest of their lives; and (5) that contractors used for helicopter roundups be held to BLM standards (ECF 30 at 11). BLM argues Plaintiffs lack standing and, alternatively, that the claims are moot (ECF 52 at 2).

## II.  LEGAL STANDARDS

The standards for reviewing a motion filed pursuant to Rule 12(b)(1) can vary depending

---

[1] The Wild Free- Roaming Horses and Burros Act, 16 U.S.C. §§ 1331–1340, requires the management of wild horses and burros on public land, recognizing that "'wild free-roaming horses and burros . . . belong to no one individual. They belong to all the American people.'" *Rock Springs Grazing Ass'n v. Salazar*, 935 F. Supp. 2d 1179, 1181–82 (D. Wyo. 2013) (quoting S. Rep. No. 92-242 (1971)). The Secretary of the Interior delegates the management program required by the Wild Horses and Burros Act to the BLM. *Id.* at 1181. The National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.*, and its regulatory program also impose processes federal agencies like BLM must adhere to before taking certain federal actions.

[2] Plaintiffs' Amended Complaint mentions that the BLM also violated the National Environment Policy Act, the 28 Hour Law, the Lacey Act, and the Preventing Animal Cruelty and Torture Act, *see* ECF No. 30 at 6, 8–9, but fails to make any allegations for relief under these statutes.

3

on the type of attack raised by the moving party. Motions to dismiss for lack of subject-matter jurisdiction may be either facial or factual attacks. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). A facial attack assumes the allegations in the complaint are true and no further materials are considered. *Id.* A factual attack goes beyond the allegations in the complaint. *Id.* When a factual attack is raised, the court has discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve the issue of jurisdiction, without requiring Rule 12 conversion to a motion for summary judgment unless the jurisdictional question is intertwined with the merits. *Id.* After a federal court finds that subject-matter jurisdiction is lacking, 28 U.S.C. § 1447(c) requires remand back to state court. 28 U.S.C. § 1447(c); *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1225–26 (10th Cir. 2012).

A court construes pro se "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). The Tenth Circuit holds that, if pleadings can reasonably be read "to state a valid claim on which the plaintiff could prevail, [they should be read] so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998).

### III.   DISCUSSION

Though the Motion does not specify, it appears the BLM raises a factual attack on jurisdiction in its Motion as it attaches a declaration of Victor August Warr, the Program Manager who was involved with the July 2021 Round Up (ECF 52-1 at 1–2). Mr. Warr explains that of the 435 horses gathered, 124 were released back to Onaqui Mountain, 236 horses were adopted, 35 were sold, 26 died or were euthanized, 13 are awaiting adoption, and 1 was transferred to the State of Utah Department of Agriculture (*id.* at 2–3). He also declares that no "future gathers are currently planned or scheduled for the Onaqui Mountain" (*id.* at 3). Finding that the attached declaration is relevant to the resolution of the Motion, the court will consider it "to resolve the issue of jurisdiction." *Baker*, 979 F.3d at 872. The court now turns to the arguments.

    **a.   The court lacks subject matter jurisdiction due to Plaintiffs' lack of standing.**

BLM argues Plaintiffs have failed to meet their burden to establish standing (ECF 52 at 2). Article III of the U.S. Constitution limits federal jurisdiction to the resolution of actual cases and controversies. U.S. Const. art. III, § 2. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To maintain standing in this action, Plaintiffs must establish that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61). The key issue in determining standing is "whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure . . . concrete adverseness . . . .'" *United States v. Richardson*, 418 U.S. 166, 173 (1974) (quoting *Flast v. Cohen*, 392 U.S. 83, 99 (1968)). *See, e.g., Raines v. Byrd*, 521 U.S. 811, 819 (1997); *Lujan*, 504

U.S. at 560-61 (Plaintiffs must establish that they have a "personal stake" in the alleged dispute and that the alleged injury suffered is "concrete and particularized" as to each plaintiff).

"Standing for equitable claims must appear on the face of the complaint." *Am. Charities for Reasonable Fundraising Regul., Inc. v. Olsen*, 731 F. Supp. 2d 1208, 1213 (D. Utah 2010) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990). As to the first element of standing, to establish an injury in fact, plaintiffs must allege that they suffered "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan*, 504 U.S. at 560. "Allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citing *Whitmore*, 495 U.S. at 158). Instead, a plaintiff must show that any alleged future injury is "certainly impending." *Id.* As to the third element, Plaintiffs must also show at least a "'substantial likelihood' that the relief requested will redress the injury claimed[.]" *Baca v. King*, 92 F.3d 1031, 1036 (10th Cir. 1996) (quoting *Duke Power Co. v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59, 75 n. 20 (1978)). *See also Arcamone-Makinano v. Haaland*, No. 21-CV-196, 2022 WL 1042573 at *3 (D. Wy. April 7, 2022) (plaintiff lacked standing as she failed "to show how any decision by the district court or [appellate court] would redress her injury.").

    *i.*    *Plaintiffs have not shown that they have suffered an injury in fact traceable to the July 2021 Round Up.*

According to the Amended Complaint, the Makinanos "planned to take their adopted children to see the Onaqui Herd" during the summer 2021 "to teach them about early American History and the famous Pony Express" (ECF 30 at 2). The Amended Complaint also alleges at the time of the filing that they could not "do that because of the roundups of July 2021." (*Id.*). As pled,

6

the court agrees with the BLM that the Makinanos "have not established an injury in fact that is fairly traceable to the challenged agency conduct" (ECF 52 at 17). It is unclear how the July 2021 Round Up affected their ability to visit the Onaqui Herd, or how this interfered with their ability to teach their children "about early American History and the famous Pony Express" as there are no other accompanying details to support these allegations (ECF 30 at 2). Plaintiffs argue that it was "common knowledge" that the helicopter gather "significantly limited viewing of the Onaqui Herd," and cite to the BLM website that states: "Some days the gather may not provide the viewing opportunity due to variable circumstances" (ECF 52 at 11). Although the July 2021 Round Up could have temporarily affected the potential viewing opportunity, Plaintiffs still fail to allege how this meets the injury element to standing.

  This case is akin to *Downer v. Bureau of Land Mgmt.*, No. 20-CV-297-SWS, 2021 WL 7210048, at *4 (D. Wyo. Mar. 12, 2021), a case in which the court found that, although sincere, Plaintiffs' interests in seeing the wild horses did "not convey standing for them to sue." *Id.* There, the court held that "unspecific intentions to return are too speculative to establish legal standing or any future injury," and that Plaintiffs must provide "evidence that they will actually be deprived of the opportunity to observe and study wild horses in a future visit due to the current gather." *Id.* Just like in *Downer*, the Makinanos' plans in the Amended Complaint are too speculative, and they also fail to show any evidence that they were "actually be deprived of the opportunity to observe and study wild horses in a future visit due to the" July 2021 Round Up. *Id.* The Makinanos have therefore failed to allege an injury for standing.

  Likewise, although the court recognizes that members of Indigenous Tribes may have a peculiar relationship with the land, as pled, with respect to Plaintiff Aduddell, the Amended Complaint fails to show how being a member of the Choctaw Tribe or having this relationship

with the land amount to a concrete and particularized injury from the July 2021 Round Up. Plaintiffs also fail to respond otherwise.

As to Plaintiff Massaro, the court also finds that the Amended Complaint fails to allege an injury in fact from the July 2021 Round Up. The Amended Complaint simply states that Plaintiff Massaro is the "National President of Union Members for the Preservation of Wildlife International (ECF 30 at 3). This single allegation fails to allege a concrete and particularized injury from the Round Up. *See, e.g, Nat'l Coal. Of Latino Clergy, Inc. v. Henry*, No. 07-CV-594 JHP, 2007 WL 3113427, at *2 (N.D. Okla. Oct. 22, 2007) (finding plaintiffs failed to allege they suffered or are threatened with an injury and therefore lacked standing). Plaintiffs again do not argue otherwise in the Response.

Plaintiff Paz states that he visited the Onaqui Herd "three-to-four times a month" as part of his therapy to overcome a traumatic brain injury and to photograph and videotape the wild horses for artwork "displayed in art galleries featuring people with disabilities" (ECF 30 at 2–3). He alleges the July 2021 Round Up took away his therapy (*id.* at 2). BLM argues that the Amended Complaint fails to allege that "Mr. Paz has any future, concrete plans to visit the Onaqui herd," and categorizes these allegations as nothing but "'some day' intentions—without any description of concrete plans" or "specification of when the some day will be"—to show the "'actual or imminent'" injury required by standing. (ECF 52 at 17 (quoting *Lujan*, 504 U.S. at 654)). BLM also cites to *Laufer v. Boulderado Hotel Lts.*, to support their argument that Mr. Paz has not established that his injury is imminent for standing purposes. *See* No. 1:20-CV-03550-RBJ, 2022 WL 523433 at *4 (D. Colo., Feb. 22, 2022).

In *Laufer*, the court considered the plaintiff's action "for violations of Title III and the related provisions of the Colorado Anti-Discrimination Act," as she used a wheelchair and checked

8

for certain required accommodations from different hotels during her cross-country trip. *Id*. at 1–2. There, the court held that the "intent to visit the area" where the accommodations would be necessary, "is insufficient to state an injury that could support Article III standing" when that is all that is alleged. *Id*. at *4. Unlike *Laufer*, Plaintiff Paz does not simply allege an "intent" to visit the Onaqui Herd, but instead alleges that he visited the Herd "three-to-four times a month" for both personal and rehabilitative reasons (ECF 30 at 2–3). These facts differ from the "intent" to visit facts set out in *Laufer*, and that case is therefore inapposite. The allegations in the Amended Complaint demonstrate that Plaintiff Paz had concrete plans to visit during the time of the July 2021 Round Up. The alleged inability to access his alleged therapy also alleges a particularized injury from the July 2021 Round Up. Notwithstanding, Plaintiff Paz has "not offered any evidence that" he was "deprived of the opportunity to observe and study wild horses in a future visit due to the" July 2021 Round Up. *See Downer*, 2021 WL 7210048, at *4. As set out in Mr. Warr's declaration, 124 horses have been released back to the Onaqui Mountain and there are no current scheduled roundups. Plaintiff Paz has therefore failed to establish an injury in fact.

Accordingly, Plaintiffs have not shown an injury in fact traceable to the July 2021 Round Up as required for Article III standing.

  ii. *Plaintiffs have also failed to show their requests for relief can be redressed by a favorable decision of this court.*

Even if the Plaintiffs were able to show injury in fact, Plaintiffs have not met their burden of demonstrating the third element of standing, redressability. Plaintiffs cite to 43 C.F.R. § 4710.5 as one mechanism to support their request for relief to close the range to grazing by livestock. This section states that to protect "wild horses or burros" "the authorized officer *may* close appropriate areas of the public lands to grazing use by all or a particular kind of livestock." 43 C.F.R. § 4710.5 However, the language of the statute does not direct or mandate the authorized officer to close the

9

public lands. Instead, it gives the officer the discretion to take such an action. *See W. Rangeland Conservation Ass'n v. Zinke*, 265 F. Supp. 3d 1267, 1282 (D. Utah 2017) ("Once BLM determines that an overpopulation in fact exists in a given area, the agency has wide discretion in how it addresses that overpopulation."). Moreover, as set forth above, the July 2021 Roundup has been completed. Accordingly, Plaintiffs have failed to show how this requested relief will likely to be redressed by a favorable judicial decision.

Regarding the request to return the horses, though 124 of the horses have been returned, Plaintiffs have failed to show how their request of returning the horses to the Onaqui range is one that would be likely redressed by a favorable judicial decision. The BLM points the court to *Arcamone-Makinano v. Haaland*, a case in which the Tenth Circuit affirmed a district court decision stating that because the round up had already occurred, the plaintiffs were unable to present "a claim that could be 'redressed by a favorable decision by this Court.'" 2022 WL 1042573 at *1. The court finds that the circumstances here are similar because the round up has already happened, and many of those horses are no longer under the jurisdiction of the BLM. Plaintiffs' request is therefore not one that could be redressed by a favorable decision by this court.

In response, Plaintiffs cite to *American Horse Protection Ass'n, Inc. v. Watt*, 694 F.2d 1310, 1311 (D.C. Cir 1982) to support their redressability argument. However, this case is not controlling and not persuasive to the present matter. *Watt* concerned a permanent injunction enjoining the BLM from removing horses from the range without the court's approval. *Id.* at 1311. The BLM sought to dissolve that injunction, but the court made a finding that the BLM did not comply with the order and remanded the matter back due to a change in the law. *Id.* The facts of this case are dissimilar to those here and therefore do not support the requested relief.

As to the requests for GPS tracking to keep the horses in off-range pastures, and that the contractors using helicopters be held to BLM standards, Plaintiffs have failed to show any authority for this relief. Because the July 2021 Roundup has been completed, Plaintiffs have also not shown how this could be redressed by the court. The Response does not address this either.

Lastly, addressing Plaintiffs request for declaratory relief, Plaintiffs request an order that BLM violated the Wild Horses and Burros Act "when it gathered and removed wild horses from the Onaqui Mountain Herd Management Area . . . in July 2021"" (ECF 53 at 3) (ECF 30 ¶ 40). BLM argues Plaintiffs cannot show redressability because under Tenth Circuit precedent, claims for retrospective declaratory relief require monetary damages coupled with a past constitutional violation which Plaintiffs have not alleged. *See, e.g., Wisness v. Yocom*, 433 F.3d 727, 735 (10th Cir. 2006) ("[W]e treat declaratory relief as retrospective only 'to the extent that it is intertwined with a claim for monetary damages that require us to declare whether a past constitutional violation occurred.'") (internal citation omitted). Plaintiffs respond by arguing that requests for declaratory relief do not require monetary damages or a need to resolve alleged constitutional violations (ECF 53 at 3).

Though Plaintiffs make no monetary demands intertwined with constitutional allegations, Plaintiffs cite to caselaw showing Defendant's construction of claims for declaratory relief is too narrow. *See, e.g.*, *Aetna Life Ins. Co of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937) ("[A] concrete case admitting of an immediate and definitive determination of the legal rights of the parties … may not require the award of process or the payment of damages."); *United States v. Fisher-Otis Co., Inc.*, 496 F.2d 1146, 1149 (10th Cir. 1974) ("[T]he question in each case is whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (citing

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Although BLM argues these cases are distinguishable from the present case, the court finds that these cases cited by Plaintiffs support a broader interpretation regarding claims for declaratory relief.

However, even looking to these cases, Plaintiffs' Amended Complaint does not contain the necessary allegations detailing any "adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Fisher-Otis Co.*, 496 F.2d at 1149 (stating that a substantiated "present claim of right" warrants declaratory judgment when "under all the circumstances," it establishes "the existence of a substantial controversy between parties"). Plaintiffs do not allege there is a present controversy between the parties impacting respective legal interests of sufficient immediacy, nor can they because the July 2021 Round Up is complete. Moreover, Mr. Warr declares "no future gathers are currently planned or schedule for the Onaqui Mountain" (ECF 52-1 at 3), further undermining Plaintiffs' ability to allege there is a present controversy that would impact the legal interests of the parties.

Accordingly, the Amended Complaint does not contain sufficient allegations to establish the redressability element of standing. Because Plaintiffs have thus failed to sufficiently allege either an injury in fact or redressability, Plaintiffs have failed to meet their burden to establish Article III standing, and the court lacks jurisdiction over Plaintiffs' case.

## IV. RECOMMENDATION

For these reasons, the court RECOMMENDS that BLM's Motion to Dismiss for lack of subject-matter jurisdiction (ECF 52) be GRANTED and the matter be remanded back to the state court. *See Hill*, 702 F.3d at 1226 ("[T]he plain language of § 1447(c) gives no discretion to dismiss rather than remand an action removed from state court over which the court lacks subject-matter jurisdiction" (quoting *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557–58 (10th Cir. 2000))).

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within fourteen (14) days of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 24 February 2023.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah