IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMELIA ARCAMONE-MAKIANO, BONIFACIO MAKIANO, GUILLERMO AVILA PAZ, CLIFTON ADUDDELL, and RANDAL MASSARO<br><br>    Plaintiffs,<br><br>v.<br><br>BUREAU OF LAND MANAGEMENT,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>Case No. 2:21-cv-00458-JNP-CMR<br><br>District Judge Jill N. Parrish |

Before the court are two objections to the Report and Recommendation issued by Magistrate Judge Cecilia Romero. ECF Nos. 63, 65. The first is an objection filed by Amelia Arcamone-Makiano, Bonifacio Makiano, Guillermo Avila Paz, Clifton Aduddell, and Randal Massaro (collectively, Plaintiffs). ECF No. 63. The second is an objection filed by Defendant Bureau of Land Management ("BLM"). ECF No. 65. The court overrules both objections and adopts the Report and Recommendation in full. ECF No. 62.

## BACKGROUND

On June 29, 2021, Amelia Arcamone-Makiano and Bonifacio Makiano, proceeding pro se, filed a lawsuit in the Third District Court of Utah against Defendant Bureau of Land Management ("BLM") and the American Society for the Prevention of Cruelty of Animals ("ASPCA") alleging that BLM had violated the Wild and Free-Roaming Horses and Burros Act ("WHBA"), 16 U.S.C. §§1331–40, and various other environmental statutes. ECF No. 8-1 at 2–5. On July 27, 2021,

Defendants removed the case to this court. ECF No. 1. Thereafter, Plaintiffs filed a motion to amend the complaint and to add Guillermo Avila Paz, Randal Massaro, and Clifton Aduddell as plaintiffs, which the court granted. ECF Nos. 23, 29.

On September 7, 2021, BLM and ASPCA filed motions to dismiss. ECF Nos. 33, 34. Judge Romero issued a report and recommendation in favor of dismissing ASPCA and against dismissing BLM, which this court adopted in full. ECF Nos. 44, 50. On August 16, 2022, BLM filed a second motion to dismiss for lack of jurisdiction in which BLM alleged that Plaintiffs lacked standing. ECF No. 52. The motion was fully briefed on October 17, 2022. ECF No. 57. On February 22, 2023, Plaintiffs filed a motion to amend the complaint and to add Becky Peacock as a plaintiff. ECF No. 59. The following day, Judge Romero issued her report and recommendation concluding that the court lacks subject matter jurisdiction over the case because plaintiffs did not "sufficiently allege either an injury in fact, or redressability . . . ." ECF No. 62 at 12.

Plaintiffs objected to Judge Romero's Report and Recommendation. ECF No. 63. On March 9, 2023, BLM filed a response opposing Plaintiffs' motion to amend the complaint, ECF No. 64, and a partial objection to Judge Romero's Report and Recommendation. ECF No. 65. On March 15, 2023, Plaintiffs filed a reply brief supporting their motion to amend the complaint. ECF No. 66.

**STANDARD OF REVIEW**

In reviewing a magistrate judge's Report and Recommendation, the district court "must determine de novo any part of the [report] that has been properly objected to." FED. R. CIV. P. 72(b)(3).

Courts construe the pleadings of pro se plaintiffs liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[I]f the court can reasonably read the pleadings to state a valid claim

2

on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* However, "we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

"Article III of the Constitution permits federal courts to decide only 'Cases or 'Controversies.'" *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020) (citing U.S. Const. art. III, § 2). "To establish a case or controversy, a plaintiff must possess standing to sue." *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "Standing 'ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate.'" *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021) (internal citation omitted).

> To show that he has Article III standing, a plaintiff must demonstrate three elements: injury in fact, traceability, and redressability. To demonstrate an injury in fact, a plaintiff must show he has suffered an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. The element of traceability requires the plaintiff to show that the defendant is responsible for the injury, rather than some other party not before the court. Finally, the requirement of redressability ensures that the injury can likely be ameliorated by a favorable decision.

*S. Utah Wilderness Alliance v. Office of Surface Mining Reclamation and Enforcement*, 620 F.3d 1227, 1233 (10th Cir. 2010) (internal quotations omitted). At the motion-to-dismiss stage, courts look to the well-pleaded allegations of the complaint to determine whether a plaintiff has met this burden. *Lupia*, 8 F.4th at 1190. When "the defendant files a motion to dismiss for lack of jurisdiction, thus putting the plaintiff's Article III standing in issue, a district court may conduct

3

limited discovery on the jurisdictional issue . . . ." *Infant Swimming Rsch., Inc. v. Faegre & Benson, LLP*, 335 F. App'x 707, 713 (10th Cir. 2009).

## ANALYSIS

I.     **Plaintiffs' Objections**

In her Report and Recommendation, Judge Romero concluded that Plaintiffs lacked standing because they had failed to allege an injury-in-fact and they had not demonstrated that the relief that they had requested could be redressed by a favorable decision from this court. ECF No 62 at 6–12. Plaintiffs argue that Judge Romero erred by not addressing the motion to amend their complaint. ECF No. 63 at 2. Specifically, Plaintiffs assert that the proposed second amended complaint affects the determination of subject matter jurisdiction and that without considering the motion, "error of fact is imminent." *Id.*

The court disagrees. "A plaintiff must maintain standing at all times throughout the litigation for a court to retain jurisdiction." *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006) (internal quotation omitted). When an amended complaint supersedes the original complaint, courts ask whether plaintiffs would have standing if, at the time they had filed the initial complaint, they had made the allegations contained in the amended complaint. *See S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) ("Thus, although we examine the allegations in SUWA's Amended Complaint, our inquiry focuses on whether SUWA had standing when the original complaint was filed in April 2007.").

Judge Romero correctly concluded, and Plaintiffs do not challenge, that Plaintiffs did not have standing under the amended complaint.[1] Because Plaintiffs must have standing "at all times throughout the litigation," *Lippoldt*, 468 F.3d at 1216, Judge Romero was not required to consider the motion to amend filed by Plaintiffs, ECF No. 59, or the proposed amended complaint in determining whether Plaintiffs had standing. As such, the court is persuaded to overrule Plaintiffs' objection.

Moreover, even if the proposed amended complaint had been considered, the court is persuaded that Plaintiffs still would not have standing because the proposed amended complaint does not fix the redressability defects in the amended complaint.[2] "In order to satisfy the redressability requirement for constitutional standing, a plaintiff must show that there is at least a substantial likelihood that the relief requested will redress the injury claimed." *Baca v. King*, 92 F.3d 1031, 1036 (10th Cir. 1996) (internal quotations and citations omitted). Plaintiffs allege two types of injuries in the proposed amended complaint: injuries that arise from the 2021 Gather, *see* ECF No. 59-1 (describing Ms. Peacock's emotional injuries and Mr. Paz's deprivation of therapy which resulted from changed herd dynamics allegedly caused by the 2021 Gather), and a reduction in the opportunities to observe, study, or recreate with wild horses, *see id.* at 3 (explaining that the

---

[1] Although Plaintiffs stated that they object to "each and every part of the Court's Report and Recommendation," the only specific objection that they argued is that Judge Romero did not consider their motion to amend. ECF No. 63 at 5.

[2] To establish standing, a plaintiff must have suffered an injury in fact that is traceable and redressable. *S. Utah Wilderness Alliance*, 620 F.3d at 1233. The complaint must contain *all* three elements. *Id.* Because the court concludes that redressability is lacking, the court does not discuss the elements of injury in fact and traceability.

Makianos were injured because they wanted to teach their children about the Onaqui herd's role in the Pony Express and "[n]ow horses are rarely seen at the Pony Express relay stations . . . .").

As a preliminary matter, the court is not persuaded that Plaintiffs' allegations regarding a reduction in wild horse viewing opportunities rise to the level of a legally cognizable injury.

> With respect to Plaintiffs' abilities to still observe the horses and burros, the animals will still be present after the gather. The Court is unaware of any enforceable right to observe a particular number of animals, and it is sheer speculation that any particular individual or family unit will be affected.

*In Def. of Animals v. U.S. Dep't of Interior,* 737 F. Supp. 2d 1125, 1138 (E.D. Cal. 2010). Therefore, in determining redressability, the court considers only whether the additional remedies requested by Plaintiffs in the proposed amended complaint address injuries inflicted by the 2021 Gather. The court concludes that they do not.

Like the amended complaint, the proposed complaint requests that the court grant declaratory relief stating that the BLM violated the WHBA in conducting the July 2021 Gather and issue an order closing the Onaque range to private livestock grazing pursuant to 43 C.F.R. § 4710.5. ECF No. 59-1 at 13–14. These requests have not materially changed from the amended complaint to the proposed amended complaint. Beyond stating that "Defendant's unlawful actions are redressable; this is a live controversy," Plaintiffs have not addressed Judge Romero's findings regarding redressability. ECF No. 63 at 4. Having reviewed Judge Romero's Report and Recommendation, the court concludes that, for the reasons explained therein, Plaintiffs' requests for declaratory relief and to compel closure of the range do not redress the injuries they alleged to have suffered from the 2021 Gather. ECF No. 62 at 9-12.

The additional relief that Plaintiffs request in the proposed amended complaint also fails to redress the injuries they suffered from the 2021 Gather. Specifically, Plaintiffs request that the

court hold contractors liable to BLM standards, hold BLM accountable for horses that are sold and transported for slaughter, and order BLM to stop darting mares. ECF No. 59-1 at 15. But it is not clear how holding BLM and its contractors liable *now* or ordering BLM to stop darting horses *now*, would redress injuries that Plaintiffs allegedly sustained in 2021.

Moreover, the court cannot grant the additional relief that Plaintiffs request in the proposed amended complaint. Plaintiffs request that the court issue an order holding contractors "liable to BLM Standards and laws for humane gathers" and holding BLM "accountable for horses and burros, which the BLM gathers, that are sold and transported for slaughter through its failed adoption policy and procedures." ECF No. 59-1 at 15. But it is unclear what such an order would actually entail. "General deficiencies in compliance . . . lack the specificity requisite for agency action." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004). Courts cannot "simply enter a general order compelling compliance . . . without suggesting any particular manner of compliance." *Id.* Even if Plaintiffs prevailed, the court could not grant the relief requested. Thus, the court is persuaded that Plaintiffs' proposed requests regarding accountability neither redress the injuries they sustained in 2021, nor can be granted by the court.

In the proposed amended complaint, Plaintiffs also request that the court order BLM to stop darting mares. Like the remedies previously discussed, it is unclear how addressing ongoing mare darting redresses prior injuries. Furthermore, the court lacks the authority to grant Plaintiffs' request. The WHBA provides that "[t]he Secretary shall manage wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance on the public lands." 16 U.S.C. § 1333(a). If there is an overpopulation of wild horses, the Secretary may consider "the removal or destruction of excess animals, or other options (such as sterilization, or natural controls on population levels)." 16 U.S.C. § 1333(b)(1). Because the

7

WHBA explicitly tasks BLM with controlling the wild horse population, and darting mares is a fertility control mechanism, the court lacks the authority to order BLM to stop darting mares. *See Baca*, 92 F.3d at 1037 ("Such relief is beyond our authority to give. No court has the power to order the BLM or the Department of Interior to grant Mr. Baca another grazing lease, because the very determination . . . are matters completely within the Secretary of Interior's discretion."). In other words, even if Plaintiffs were to succeed, the court could not grant their requested remedy.

In short, the court is persuaded that Judge Romero correctly concluded that Plaintiffs lacked standing on the basis of the second amended complaint. Even if the proposed amended complaint were considered, it does not correct Plaintiffs' standing deficiencies. Accordingly, the court overrules Plaintiffs' objections.

## II.     BLM's Objection

BLM objects only to Judge Romero's recommendation that the case be remanded to the state court. ECF No. 65 at 1. BLM asserts that "[w]hen a federal agency removes a case to federal district court to raise sovereign immunity or any other jurisdictional defense, the district court should remand only if it determines both that it lacks jurisdiction *and* the state court possesses jurisdiction over the claim." *Id.* at 2.

However, 28 U.S.C. § 1447(c) states that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "[S]tanding [is] an element of subject matter jurisdiction." *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012). "[T]he plain language of § 1447(c) gives no discretion to dismiss rather than remand an action removed from state court over which the court lacks subject-matter jurisdiction." *Id*. at 1226 (quoting *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557–58 (10th Cir.2000)); *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500

U.S. 72, 89 (1991) (internal quotation omitted) (noting that under "the literal words of § 1447(c) . . . [courts do not have the] discretion to dismiss rather than remand an action."). Restated, even if the case would inevitably be dismissed in state court, § 1447(c) does not permit the court to dismiss a case in lieu of remanding it.

BLM cites to *Wolff v. United States*, 76 F. App'x 867, 870 (10th Cir. 2003) (unpublished) and *Cromar v. United States*, 816 F. App'x 234, 239 (10th Cir. 2020) (unpublished) for the proposition that the Tenth Circuit has created a futility exception in § 1447(c) that permits the district court to dismiss a case in lieu of remanding it when the United States' sovereign immunity would prevent the state court from exercising jurisdiction over the matter. But in both *Wolff* and *Cromar*, the Tenth Circuit did not hold that § 1447(c) permits dismissal rather than remand, but that in dismissing a case for lack of standing in lieu of remanding it to state court (which would lack jurisdiction due to the United States' sovereign immunity), the district court did not err in a way that required reopening the case. *Cromar*, 816 F. App'x at 239 ("We decline to waste judicial resources by requiring the district court to remand the case to state court, which would inevitably apply sovereign immunity and dismiss for lack of subject-matter jurisdiction."). Declining to reopen and remand a case, where remand would also be futile, is a far cry from creating a sovereign immunity jurisdictional exception that directly contravenes the mandatory language of § 1447(c).

The court is unpersuaded by BLM's argument and overrules its objection.

## CONCLUSION

The court OVERRULES both parties' objections, ECF Nos. 63, 65, and ADOPTS IN FULL the Report and Recommendation of Judge Romero. ECF No. 62. Accordingly, the court concludes that it lacks subject matter jurisdiction over this case and remands it back to state court pursuant to 28 U.S.C. § 1447(c).

DATED March 27, 2023.

                                      BY THE COURT

                                      _____
                                      Jill N. Parrish
                                      United States District Court Judge